JOHN R. GILKESON, APPELLEE, V. NORTHERN GAS
ENGINEERING COMPANY, APPELLANT.

FILED MAY 15, 1934. No. 29148.

*Crossman, Munger & Barton* and *Robert G. Fuhrman,*
for appellant.

*Hanley & O'Brien* and *Archie M. Smith, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and
PAINE, JJ., and RAPER and TEWELL, District Judges.

TEWELL, District Judge.

This action is prosecuted under the provisions of the
workmen's compensation act. The compensation commis-
sioner denied compensation. This action was then filed
in the district court for Thurston county, and a trial re-
sulted in an order of that court allowing compensation
for total permanent disability for 90 weeks and for
partial permanent disability for 210 weeks, each at the
rate of $15 a week. The cause comes to this court upon
appeal by the defendant, Northern Gas Engineering Com-
pany, hereinafter called appellant.

The applicant, John R. Gilkeson, hereinafter called ap-
pellee, was employed by appellant, at a wage of $52.50
a week, to superintend the work done in constructing a
pipe-line. On October 14, 1931, when about 51 years of
age and while working at such employment near Pender,
Nebraska, the appellee instructed a fellow employee to

attempt to drive an automobile up a grade in a road. The road was muddy. For some immaterial reason the automobile, upon which appellee was pushing from behind, rolled backward a short distance, and appellee pushed and lifted upon it to prevent it from going backward over a bank. The driver of the automobile then succeeded in starting it forward by the force of its own power. It is not claimed in the pleadings that appellee received any injury from being struck by the automobile or by any other object, or received any injury through violence other than what might have arisen from the strain arising from his pushing and lifting upon the automobile. The appellee contends that the exertion experienced in lifting and pushing upon said automobile so strained the muscles of his heart as to cause a mitral regurgitation therein, and that such condition of his heart resulted in his total permanent disability.

According to the plaintiff's testimony he experienced difficulty in breathing immediately after lifting upon the automobile, and went to the hotel in Pender, ate a lunch, and then, in the afternoon of the same day, went to his room in Emerson, Nebraska, and called a doctor. The next morning he went to Kansas City, Missouri, where he stayed one day and one night, and then returned to Emerson, and after resting there in bed a day or so went back to work. He found that he did not feel well enough to work, and stayed at the hotel in Pender and directed the construction work from there. About ten days after his alleged injury, appellee went to Sioux City, Iowa, where he called upon Dr. C. C. Yancey. He spent about all of the time between October 28, 1931, to July, 1932, in various hospitals in Sioux City, Iowa, Omaha, Nebraska, and Kansas City, Missouri.

The testimony of four medical experts appears in the record. Dr. Jongewaard, a witness for defendant, testified that he examined the appellee at Jefferson, Iowa, on January 30, 1931, over eight months before the alleged injury, and treated him several times between that date

and March 18, 1931, and that the appellee then had a mitral regurgitation or leakage of the mitral valve of his heart. He says appellee then experienced difficulty in breathing. Rest in bed was prescribed. Dr. Anderson, a witness for the defendant, examined the appellee on December 29, 1933, the night before the trial in the district court. This witness testified that a mitral regurgitation then still existed, that he found the heart fully compensated, no œdema, or swelling of the lung structure, no cyanosis, or discoloration of the skin, no dyspnœa, or shortness of breath, and very little, if any, hypertrophy, or enlargement of the heart. About nine months before the alleged injury appellee had had all of his teeth pulled. The witness Jongewaard testified that appellee in January, 1931, gave him a history of having had pneumonia in 1908, rheumatism in the legs and forearms about 1928 that again occurred in the shoulder joints and legs in 1930, and that appellee then stated that he then had spells of dizziness and felt "knocked out."

Doctor Otten, a witness for appellee, testified that he examined appellee at Springfield, Illinois, in May, 1931, and found his lungs and heart normal. Dr. Yancey, under whose care appellee was during the greater portion of the six months following the date of the alleged injury, was a witness for appellee, made a diagnosis about ten days after the alleged injury of cardiac decompensation with dilatation. This witness testified that a mitral regurgitation existed at the time of his diagnosis, and that in his opinion it was caused from stress or strain being thrown upon appellee.

The weight of the medical testimony is to the effect that the cause of a mitral regurgitation in the heart is nearly always an endocarditis, or infection of the inner lining of the heart, which so affects the mitral valve as to cause it to fail to completely close just before the heart contracts to force the blood through the body. A part of the blood is thus, contrary to normal, forced back through the mitral valve, causing a sound technically known as

a systaltic murmur. Endocarditis followed by a mitral regurgitation is shown often to result from rheumatism, and from an infected condition of the teeth or sinuses. A mitral regurgitation often causes difficulty in breathing, especially after exertion. The evidence shows that once a mitral regurgitation exists, it continues throughout the remainder of the life of its possessor, and that strenuous exertion should be avoided by one having such a condition in the heart.

One of the questions involved in this case is that of whether or not the exertion experienced by appellee was an injury caused by accident, which, either alone or in combination with other causes, proximately caused the disability for which compensation is sought. From a consideration of the evidence, we conclude that the appellee had a mitral regurgitation and disability therefrom prior to and at the time of such exertion, and that it was not increased in extent but was made temporarily more disabling by the exertion.

Did it combine with a preexisting disease to produce a disability in such manner as to be a part of the proximate cause of an injury caused by accident? This court has held, in cases arising by virtue of the workmen's compensation act, that when an injury combines with a preexisting disease to produce a disability, it is sufficient to satisfy the requirement of proximate cause of disability to show that the injury and preexisting disease combined to produce the disability, and that it was not necessary to show that the injury accelerated or aggravated the disease before the disability arising from the injury might be adjudged compensable. *Gilcrest Lumber Co. v. Rengler,* 109 Neb. 246. Citations of other decisions of this court in cases of the nature of this one and in which an injury combined with a preexisting disease to produce a disability are as follows: *Skelly Oil Co. v. Gaugenbaugh,* 119 Neb. 698; *Van Vleet v. Public Service Co.,* 111 Neb. 51; *Miller v. Central Coal & Coke Co.,* 123 Neb. 793;

*Uribe v. Woods Bros. Construction Co.*, 124 Neb. 243. Section 48-128, Comp. St. 1929, provides:

"If an employee receives an injury, which, of itself, would only cause partial disability, but which, combined with a previous disability, does in fact cause a total disability, the employer shall only be liable as for the partial disability, so far as the subsequent injury is concerned."

The reported opinion in none of the above cited cases makes mention of this provision of the statutes. In all of them, however, in which compensation was allowed, the injury that combined with the preexisting disease was such as to form a part of the proximate cause of an injury caused by accident, and did not arise merely from exertion no greater in extent than that ordinarily incident to the occupation involved. None of these cases goes further in this regard than to hold that the time during which compensation shall be paid is based upon the period of the disability suffered by the combined action of all causes thereof. In this case the exertion to which appellee was subjected is not shown by the evidence to have been such as would have produced, by itself, any disability whatsoever, and is not shown to have been greater than that ordinarily incident to appellee's occupation.

The following citations are of cases in which exertion in some form or another combined with a preexisting disease to produce a disability, and in which compensation was either denied or apportioned according to the per cent. of disability due to the injury: *Banks v. Industrial Commission*, 74 Utah, 166; *Fredrickson v. Industrial Commission*, 68 Utah, 206; *Herlihy's Case*, 267 Mass. 232; *Standard Oil Co. v. Industrial Commission*, 322 Ill. 524; *Wallins Creek Collieries Co. v. Williams*, 211 Ky. 200; *Kingston-Pocahontas Coal Co. v. Maynard*, 209 Ky. 431; *Employers Mutual Liability Ins. Co. v. Industrial Commission*, 212 Wis. 669.

The workmen's compensation act provides for compensation "in every case of injury or death caused by accident arising out of and in the course of employment."

Comp. St. 1929, sec. 48-109. The exertion shown in this case is not shown to have been an injury caused by accident that formed any part of the proximate cause of the disability for which compensation is sought. With this view of the case, it becomes unnecessary to decide whether or not the percentage of disability that arose from the preexisting disease must be determined and the award diminished accordingly, and unnecessary to decide whether or not a sufficient showing of the extent and reasonable value of doctor's and hospital bills, of which complaint is made, was shown to justify the award made therefor.

For reasons herein given, the judgment of the district court is reversed and the cause remanded, with directions to dismiss this action at the cost of the appellee.

REVERSED.