LARR *v.* SECRETARY OF STATE.

1. AUTOMOBILES—CERTIFICATE OF TITLE—FINANCIAL RESPONSIBILITY ACT.

Where it is conceded that the secretary of State lacks authority under the motor vehicle financial responsibility act to demand a surrender of plaintiff's certificate of title of his motor vehicle, it is assumed the secretary of State has or will return to plaintiff his certificate of title (Act No. 203, § 3a, Pub. Acts 1933, as added by Act No. 248, Pub. Acts 1943).

2. SAME—FINANCIAL RESPONSIBILITY ACT—SUSPENSION OF LICENSES.

Under the motor vehicle financial responsibility act the secretary of State must suspend a motor vehicle operator's license, chauffeur's license and registration certificate of an uninsured operator or owner whose car is involved in an accident where there is a failure to comply with the statute by satisfying personal injury or death claims thereby incurred or showing financial responsibility (Act No. 203, § 3a, Pub. Acts 1933, as added by Act No. 248, Pub. Acts 1943).

3. SAME—SUSPENSION OF LICENSES—QUESTIONS REVIEWABLE—NEGLIGENCE.

In suspending licenses under the motor vehicle financial responsibility act the secretary of State has no authority to

pass upon the question of negligence or freedom from negligence of the licensees involved (Act No. 203, § 3a, Pub. Acts 1933, as added by Act No. 248, Pub. Acts 1943).

4. Constitutional Law—Licenses—Automobiles—Special Duties of Licensees.

    A license to operate a motor vehicle is a privilege granted by the State and, since it is a special privilege, special duties in connection therewith may be exacted without providing compensation therefor.

5. Licenses—Condition Imposed Upon Licensees.

    The right to impose a condition upon a licensee of the State is not based upon culpability, but instead it is incident to his status as a licensee.

6. Costs—Mandamus—Licenses—Automobiles—Financial Responsibility Act.

    No costs are allowed in mandamus proceeding to compel secretary of State to vacate an order suspending plaintiff's license to operate motor vehicles and his registration certificate where an interpretation of the motor vehicle financial responsibility act is involved (Act No. 203, § 3a, Pub. Acts 1933, as added by Act No. 248, Pub. Acts 1943).

Mandamus by Leo Larr against Herman H. Dignan, Secretary of State, to compel vacation of order suspending plaintiff's operator's license, registration certificate and certificate of title. Submitted January 14, 1947. (Calendar No. 43,432.) Writ denied April 8, 1947.

*Charles S. Matthews,* for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendant.

Sharpe, J. Plaintiff, Leo Larr, filed a petition in the Supreme Court for an order to show cause why Herman H. Dignan, secretary of State, should not vacate an order suspending plaintiff's operator's license, registration certificate and certificate of

title.   Upon the filing of the petition, we issued an order to said Herman H. Dignan, secretary of State, to show cause.   The return to the order to show cause avers that the action taken by the secretary of State was in compliance with the mandatory provisions of Act No. 203, § 3a, Pub. Acts 1933, as added by Act No. 248, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 4685–53a, Stat. Ann. 1946 Cum. Supp. § 9.1543 [1]).

The facts, which developed the issues in the case at bar, are that on the 19th day of January 1946, plaintiff was the owner of a motor vehicle; that on said date the motor vehicle, while being driven by plaintiff's son, was involved in an accident in which two persons were injured; that plaintiff filed a report with the department of State of said accident as required by law, showing among other things that at the time of the accident plaintiff was not carrying public liability insurance; that thereafter a demand was made upon plaintiff by the financial responsibility division of the secretary of State's office to deposit with the office of the secretary of State the sum of $600 cash or security or an affidavit of settlement of all personal injury claims arising out of the accident; that upon the failure of plaintiff to furnish the required security or affidavit of settlement, the financial responsibility division of the secretary of State's office notified him that his license and registration certificates were under suspension; and that coupled with the above notification was a demand for the surrender of plaintiff's operator's license, certificate of registration and certificate of title.

The attorney general's office, representing defendant, concedes that under the act in question defendant lacks authority to demand a surrender of plaintiff's certificate of title.   In our discussion of

the question involved in this case we shall assume that defendant has or will return to plaintiff his certificate of title.

Plaintiff urges that the provisions of section 3a of the act in question only apply in the event of previous final determination of legal liability and liquidation of damages; and that no such determination of legal liability exists in the present case.

Section 3a of Act No. 203, Pub. Acts 1933, as added by the 1943 act reads in part:

"Every person owning or operating a motor vehicle which is in any manner involved in an accident on or after the effective date of this amendment anywhere within the boundaries of this State in which any person is killed or injured shall immediately, if not physically or mentally incapacitated, report said accident in writing to the secretary of State, upon forms prescribed and supplied by him. Such report shall contain the names and addresses of the owners and operators of all motor vehicles involved in said accident, and of all persons injured or killed, the date, time and place of the occurrence and the name of any insurance carrier whose policy of insurance was in force and applicable to the liability of said owner or operator. Failure to furnish said report within 10 days shall constitute a misdemeanor and sufficient ground for the suspension or revocation of operator's license and registration certificate in the manner provided in section 2 of this act. If such report shall show that an insurance policy issued by an insurance carrier admitted to do business in this State or in the State of residence of the owner or operator reporting was in force, insuring against liability for personal injury or death, within the limits prescribed in section 2 of this act, or if said owner or operator has obtained from the secretary of State a permit to act as a self-insurer in this State, or if prior to suspension or revocation of any license or certificate under

the provisions of this section 3a, the secretary of State shall be satisfied by an affidavit certifying that all personal injury or death claims arising out of said accident have been settled, or that security has been filed, then further proceedings under this section 3a shall not be required. In the absence of such showing, the secretary of State shall, not less than 30 or more than 60 days after said report is received, suspend the motor vehicle operator's license, chauffeur's license and registration certificate of such uninsured operator or owner, in the manner and subject to the conditions prescribed in section 2 with respect to offenses requiring such action. Such suspension shall continue until proof of financial responsibility shall be furnished in accordance with the provisions of this act, and as to proceedings under this section 3a, removal of such suspension shall also require the settlement of all claims for personal injury or death resulting from such accident or the deposit with the secretary of State of security, in such form and amount not in excess of the limits provided in section 2, as shall be required by him, for the payment of such claims. Such security shall be available for the satisfaction of any judgment entered against any depositor within 6 months after the date of the accident, notice of which shall have been furnished to the secretary of State. Such deposit may be released at the expiration of said 6 months' period, provided the files of the secretary of State show no judgment against the depositor and the depositor or his attorney shall make and file his affidavit that no judgment has been entered. After the expiration of said 6 months, such suspension shall be discontinued if proof of financial responsibility is furnished in accordance with the provisions of section 2 of this act.''

Defendant urges that the provisions of section 3a of the act are mandatory; and that the financial re-

sponsibility division of the secretary of State's office has no discretion in the matter. We are in accord with this view.

The act provides that "every person owning or operating a motor vehicle which is *in any manner involved in an accident*" in which any person is killed or injured shall report such accident to the secretary of State. The act also provides that upon failure to file such report and comply with other provisions of the act, the secretary of State shall suspend the motor vehicle operator's license, chauffeur's license and registration certificate of such *uninsured* operator or owner.

The secretary of State has no authority to pass upon the question of negligence or freedom from negligence. He has no discretion, but is obliged to act as the law provides. If the penalty is harsh as to innocent parties, the relief sought must come from the legislative branch of our government.

A license to operate a motor vehicle is a privilege granted by the State. In *People* v. *Thompson,* 259 Mich. 109, 123, we said:

"In accepting the license (of operating a motor vehicle upon the public highways) from the State, one must also accept all reasonable conditions imposed by the State in granting the license.   *   *   * It is elementary law, where special privileges are granted by the State, special duties in connection therewith may be exacted without providing compensation therefor.   *   *   * The right to impose the condition is not based upon culpability, but instead it is incident to his status as a licensee."

See, also, *Johnson* v. *Commissioner of Agriculture,* 314 Mich. 548, 563.

The writ of mandamus is denied, but without costs as the interpretation of a statute is involved.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, and NORTH, JJ., concurred. DETHMERS, J., did not sit.