## Roller License

*Richard W. Cleckner*, of *Livengood & Nissley*, for appellant.

*Randolph C. Ryder*, Deputy Attorney General, and *Frank F. Truscott*, Attorney General, for respondent.

NEELY, J., November 15, 1954.—This matter is before us on an appeal from an order of the Secretary of Revenue of the Commonwealth of Pennsylvania suspending appellant's operator's license for an indefinite period of time, by reason of his failure to comply with the provisions of the Motor Vehicle Safety Responsibility Act of June 1, 1945, P. L. 1340, as amended, 75 PS §1277, et seq. The appeal was taken in accordance with section 2(*b*) of the Act of 1945, 75 PS §1277.2(*b*), which provides that on appeal this court is to conduct a trial de novo to determine whether the order of the Secretary of Revenue in sus-

pending appellant's operator's license was "lawful and reasonable."

Appellant was the owner and operator of an automobile involved in an accident in York County on December 9, 1953. He was driving his automobile at the time of the accident. Appellant did not have in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident.

The Secretary of Revenue on June 15, 1954, in accordance with the provisions of section 5 of the Act of June 1, 1945, P. L. 1340, 75 PS §1277.5, after determining that $10,555 was the amount of security necessary to satisfy any judgment that might be recovered against appellant for damages resulting from such accident, suspended appellant's operator's license and the registration of his car for an indefinite period. The secretary, by due notice before the effective date of the suspension, gave appellant full opportunity to deposit the amount of security required and thereby lift the suspension: Section 7 of the Act of June 1, 1945, 75 PS §1277.7. The suspension became effective when appellant failed to post security. An action in trespass has been brought against appellant in York County and this action was pending when the hearing was held on this appeal on July 9, 1954.

Appellant maintains that the suspension order violated the due process clause of the fourteenth amendment of the Constitution of the United States and article I, sec. 9, of the Constitution of this Commonwealth. Hence, appellant contends that the order was unlawful and unreasonable and that we should therefore sustain the appeal and set aside the order of the Secretary of Revenue.

In support of his contention, appellant argues that the accident occurred without any fault on his part, and that it is contrary to the provisions of the Federal

and State Constitutions to require him to post security, and suspend his license in default of security, without holding any hearing to determine his responsibility for the accident. This contention overlooks the important point that the Act of 1945 does not attempt to predicate the requirement of security by the Secretary of Revenue on any determination as to who was at fault in a motor vehicle accident.

Under the Act of May 15, 1933, P. L. 533, 75 PS §1253, et seq., proof of financial responsibility was required of persons who failed to satisfy judgments arising out of motor vehicle accidents. Where there was any failure to pay a judgment, that act required the suspension of license and forbade the issuance of a new license until the judgment was paid and until the operator furnished proof of financial responsibility for future accidents. The Act of May 15, 1933, however, was superseded by the Act of 1945.

The object, however, of the Act of 1945 is to provide further protection to the public by requiring appropriate security from all parties involved in an automobile accident to protect persons suffering damages in these accidents, regardless of fault. It is recognized that litigation involving automobile accidents is sometimes protracted and that the legal and factual questions involved in the litigation growing out of these accidents are frequently complex. The legislature intended, then, not to make the posting of security dependent upon the entry of a judgment or any determination as to who was at fault in a given accident. It was intended by the Act of 1945 to require that all persons involved in an accident should in limine have insurance or post security, so that when the legal responsibility for damages is ultimately determined security would be available to pay those damages.

In Hertz Drivurself Stations, Inc. v. Siggins et al., 359 Pa. 25, 44, 45 (1948), the Supreme Court said

that the power to regulate the highways "inheres not only in the legislature's right to provide, maintain and control the highways and their use but also in the police power of the State which it is the legislature's province to exercise in appropriate circumstances."

A person operates an automobile on our highways not as a matter of civil right but as a privilege granted by the Commonwealth of Pennsylvania. The Commonwealth, in our opinion, has the right to determine the terms and conditions upon which the privilege of using the highways shall be extended. We are of the view that in the interest of protecting all users of the highways, the Act of 1945 imposed a reasonable restriction upon the privilege of operating motor vehicles on public highways by requiring automobile liability insurance, or in the alternative that security be posted to pay damages resulting from motor vehicle accidents on our highways.

In Commonwealth v. Funk, 323 Pa. 390, 396 (1936), the Supreme Court said:

"Automobiles are vehicles of great speed and power. The use of them constitutes an element of danger to persons and property upon the highways. Carefully operated an automobile is still a dangerous instrumentality, but when operated by careless or incompetent persons, it becomes an engine of destruction. The legislature in the exercise of the police power of the Commonwealth not only may but must prescribe *how* and *by whom motor* vehicles shall be operated on the highways."

In the Funk case the Supreme Court clearly pointed out that the permission to operate a motor vehicle upon the highways of the Commonwealth is a valuable privilege but not a civil right, and also said at page 397 that:

". . . the authority which granted the privilege in question retains the power to revoke it, either for due

cause of forfeiture, or upon a change of policy and legislation in regard to the subject. The power of revocation cannot be pronounced unconstitutional, either as an impairment of a contractual right or as a deprivation of a property right."

See Larr v. Dignan, 317 Mich. 121, 26 N. W. 2d 872.

In view of the Supreme Court's conclusion that the legislature, in the exercise of the police power of the Commonwealth, must prescribe how and by whom motor vehicles shall be operated on the highways, the substantial question in this case is simply whether the Motor Vehicle Safety Responsibility Act of June 1, 1945, as amended, is a reasonable exercise of the State's police power. If it is a reasonable exercise of the police power, then the order of the secretary in this case is lawful and reasonable because the order merely followed the act. On the other hand, if the statute is not a proper exercise of the police power, the order must be set aside as being invalid.

Annually, in automobile accidents hundreds of lives are lost and injuries sustained on our highways. In these accidents there is extensive property damage. Was it unreasonable for the legislature to provide that the privilege of driving an automobile is conditioned upon the operator providing some security to redress any damages sustained by innocent parties in these multitudinous automobile accidents? We think not.

This question has not been answered in Pennsylvania, except in the Court of Common Pleas of Crawford County, in a well considered opinion by Judge Mook, Commonwealth v. Koczwara, 78 D. & C. 6 (1951). In that case Judge Mook sustained the constitutionality of the Act of 1945, although the constitutional question was not directly before him in that case. The present law does not purport to be a compulsory insur-

ance law, but does put a penalty upon a driver who operates a motor vehicle upon the highways without insurance and has an accident, in that the operator, unless he comes within certain exceptions in the act, is then required to post security with the Secretary of Revenue within 60 days in an amount sufficient to cover the damages of the injured party, otherwise his license is suspended.

As early as 1917, in Jitney Bus Association of Wilkes-Barre v. City of Wilkes-Barre, 256 Pa. 462 (1917), our Supreme Court held valid a city ordinance requiring jitney owners to post bond to secure the payment of such damages as may be sustained for loss of life or injury to persons or property occasioned on the public streets of Wilkes-Barre by the negligent operation of jitneys. The court held that it was a reasonable regulation.

We must bear in mind the great increase in motor traffic since 1917. While it was held reasonable in the jitney case to require a jitney operator to post security for the payment of damages sustained resulting from the negligent operation of jitneys, today it is in our view quite reasonable to extend the requirement by compelling security to be posted by all operators involved in an automobile accident, so that when liability is ultimately determined there will be security from which the injured parties may obtain satisfaction of their claims. It seems to us that the Act of 1945 is a reasonable police measure enacted in the interest of the welfare of the people using our highways. See Rineer v. Boardman, 32 D. & C. 27.

There is widespread authority in the United States tending to support the conclusion that the Act of 1945 is a valid police measure. The Massachusetts Supreme Court in In re opinion of the Justices, 251 Mass. 569, 147 N. E. 681 (1925), held the proposed compulsory motor vehicle insurance act of that State constitutional

as a valid exercise of the police power. The Court said at page 596.

". . . The requirement that every owner before being allowed to register his motor vehicle shall provide security for the discharge of his liability for personal injuries or death resulting from the presence of such motor vehicle on the public ways cannot be pronounced unreasonable. It furnishes a degree of assurance of compensation to those rightly and carefully using the ways and injured by the carelessness of operators of motor vehicles. . . . The requirement for security for the payment of the legal claims arising from personal injuries caused on highways by motor vehicles is an extension of the police power into a new field, so far as we are aware, but in our opinion it falls within the limits of . . . constitutional power . . .".

The brief of the Commonwealth points out that all the States have some type of safety responsibility law and that 41 of them, exclusive of Pennsylvania, have substantially the same provisions as the Pennsylvania Safety Responsibility Act of 1945. The appellate courts in numerous jurisdictions have upheld the validity of State statutes providing for the suspension or revocation of the operator's license and registration certificate of any person involved in a motor vehicle accident resulting in personal injury or property damage, unless such person deposits or posts security for the payment of any judgment which might be obtained. It has been held that these statutes are not in violation of due process of law. Their constitutionality has been upheld as a valid exercise of the police power: State v. Steelek, 262 Wis. 642, 56 N. W. 2d 514; Hadden v. Aitken et al., 156 Neb. 215, 55 N. W. 2d 620; Boyle v. Kahl, 242 Iowa 153, 46 N. W. 2d 52; Ballow v. Reeves et al., 238 S. W. 2d 141 (Ky. 1951); Escobedo v. State Department of Motor Vehicles et al., 35 Cal. 2d 870, 222 P. 2d 1; Rosenblum et al. v.

Griffin, 89 N. H. 314; 197 Atl. 701; Gillaspie v. Department of Public Safety, 259 S. W. 2d 177 (Texas 1953), certiorari denied by the Supreme Court of the United States, 74 Sup. Ct. Rep. 625 (1954); see also Ex Parte Poresky, 290 U. S. 30 (1933).

These cases all support the conclusion that the Pennsylvania Safety Responsibility Act of 1945 does not violate due process of law and must be considered as being a valid exercise of the police power. We, therefore, conclude that the statute does not violate the due process clause of the fourteenth amendment of our Federal Constitution or article I, sec. 9, of the Constitution of this Commonwealth.

Appellant further contends that the act is unconstitutional because it is a special law in contravention of article III, sec. 7, of the Constitution of this Commonwealth, in that it changes the method "for the collection of debts or the enforcing of judgments." There is no substance to this contention. The statute makes no change in the method of collecting damages. Any claim for damages growing out of automobile accidents must be enforced in our courts of common pleas. Such claims are being prosecuted currently in the numerous automobile cases in these courts. The act merely provides for the posting of security to pay whatever damages are ultimately recovered.

In Commonwealth v. Great American Indemnity Co., 312 Pa. 183 (1933), our Supreme Court upheld the constitutionality of the Act of April 22, 1903, P. L. 255, which authorized the Commonwealth to require that every contractor for public work, as a condition precedent to the award of the contract to him, give bond with approved security to pay all those who furnish labor and materials in the performance of such contract, and provided further that political subdivisions of the Commonwealth could likewise require such

security. The court overruled the appellant's contention that the act violated article III, sec. 7, of our Constitution in the following language (page 196):

"It is . . . alleged that the Act of 1903 violates article III, section 7, of the state Constitution, because it is a 'local or special law . . . , providing or changing methods for the collection of debts.' Confessedly, it is not a local law; nor is it a special law in the constitutional sense; nor does it provide or change any method for the collection of debts. It provides for the giving of a bond. . . . If defendant's contention on this point were sustained, much of our wisest legislation would be stricken down. Under such a ban would fall all of the procedural statutes passed since 1874 in relation to the collection of debts; all those which give to wage claimants a preferential claim on moneys raised by execution; those requiring security on appeals where this was not required before; those requiring nonresident plaintiffs to enter security for costs; and the numerous acts improving municipal claim and distraint procedure. Nor could any such statutes be passed hereafter. This would make the constitutional provision intolerable, and cannot be adopted."

The Superior Court, relying upon the decision of the Supreme Court in Commonwealth v. Great American Indemnity Co., supra, held in Commonwealth v. Licini, 138 Pa. Superior Ct. 277 (1940), that a provision of the Milk Control Law "requiring milk dealers to file bonds to secure payment for milk to producers and certain milk dealers," did not violate the provisions of article III, sec. 7, of our Constitution prohibiting the passage of "special laws providing or changing methods for the collection of debts." The Superior Court said that bonding is related to the legitimate purposes of preventing fraud and imposition

on the producers of milk, and to eliminate irresponsible and dishonest dealers, all of *"which is a proper exercise of the police power."*

Appellant also argues that the Act of 1945 constitutes an unlawful delegation of judicial power to the Secretary of Revenue in violation of article V, sec. 1, of the Constitution. This section provides that the judicial power "shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish."

Appellant did not raise this question in his petition for appeal, but we point out that in our judgment this contention is insubstantial.

The act does not purport to delegate any judicial power. The Secretary of Revenue does not decide whether the parties involved in an accident were guilty of negligence in any way. He does not attempt to fix the amount of any damages. He is merely empowered to perform the administrative act of requiring the posting of what he considers to be adequate security for the payment of any damages when the questions pertaining to the amount of damages and the persons entitled thereto have been judicially determined.

All the contentions advanced by appellant as to the unconstitutionality of the act must be overruled. Therefore, we conclude that the order of the secretary was lawful and reasonable. Hence, the appeal must be dismissed. Accordingly, we make the following

### Order

And now, November 15, 1954, the appeal is dismissed and the order of the Secretary of Revenue is herewith sustained.